STATE, EX REL. CITY OF CRAWFORD, APPELLEE, v. CHRISTOPHER H. BISPING ET AL., APPELLANTS.

FILED APRIL 8, 1911.   No. 16,999.

1. **Mandamus:** RIGHT TO ANSWER AFTER DEMURRER OVERRULED. When a demurrer to an application for a writ of mandamus or to the alternative writ itself is overruled, the respondents should ordinarily be allowed to answer. This is so when the demurrer has been sustained by the trial court, and is overruled by this court upon appeal. In such case when the judgment of the trial

court is reversed and the cause remanded generally, or with specific instructions to allow the relator to amend, the respondents should ordinarily be allowed to answer after relator has amended his application for the writ.

2. ———: ISSUES: TRIAL. When it appears to the trial court upon the objections of respondents to the allowance of a writ of mandamus that there is a substantial issue of fact upon which the right to the relief demanded depends, an alternative writ should be issued returnable to the county where the action is pending. Such issues cannot be tried at chambers.

3. ———: PLEADINGS. When the alternative writ is issued, it must contain all of the facts upon which the relator relies. The writ and return, or answer, thereto constitute the issues. No other pleadings are allowed.

4. ———: PROCEDURE. When upon notice of application for a writ of mandamus the respondents appear and object to the allowance of any writ, and no substantial issue of fact is presented by the objections of respondents, the court may issue a peremptory writ, and the district judge has such jurisdiction at chambers in any county in his district, and without issuing any alternative writ.

5. ———: RETURN. If a general denial in the objections or answer to the application for the writ of mandamus is inconsistent with other allegations or admissions in the answer, such general denial should be disregarded.

6. ———: ———. The application of the city of Crawford for a writ of mandamus alleged that "the relator is and has been since May, 1907, a municipal corporation, having a population of more than 1,000, existing under the laws of Nebraska as a city," that prior to that time the same territory was incorporated and styled the "Village of Crawford," and that the relator "succeeded to all the rights of said village." *Held*, That the denial of the answer "that the said relator is a city of the second class, and that it has ever been such city," is not a sufficient allegation of fact to constitute a defense.

7. Highways: ROAD FUND: CLAIMS AGAINST COUNTIES: POWER TO COMPROMISE. When a county has collected money for the road fund upon property of a city or village, one-half of such money belongs to the city or village, and should be paid over by the county treasurer upon demand. The officers of the city or village have no power to compromise the right to such money. The payment of a part by warrant which is received by the city or village as full payment, and an order of the county

board "disallowing" the remainder of a claim filed for the whole amount, and the fact that no appeal has been taken from such order, constitute no defense in favor of the county.

8. ——: ——: ——: DEFENSES. The allegation that the county "disputed the receipt of said sum of money in good faith" is too indefinite to furnish, in any view, a basis for a compromise; it not appearing from the allegation what part of the city's claim was disputed by the county, and no facts being alleged from which it can be determined whether there was in fact a genuine controversy.

9. Mandamus: CLAIMS AGAINST COUNTIES: DEFENSES This action having been pending for more than 15 months, an answer was filed alleging that no estimate or appropriation has been made or published to provide for the payment of the money, and there is now no cash in the treasury, nor any levy against which a warrant could be issued, nor any adjudication of the claim by any court or by the county officers. *Held,* That these allegations constitute no defense.

APPEAL from the district court for Dawes county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*Edwin D. Crites,* for appellants.

*Earl McDowell, A. M. Morrissey* and *A. G. Fisher,* contra.

SEDGWICK, J.

The principal facts in this case are recited in the opinion on the former appeal. *City of Crawford v. Darrow,* 87 Neb. 494. When the cause was returned to the district court, the relator with leave of the court amended the title of the cause. The term of office of one of the respondents expired during the pendency of this action, and by amendment the name of his successor was substituted as respondent. The relator then applied to one of the judges of the court at chambers for a peremptory writ. The attorney for the respondents appeared and filed an answer in the names of the original respondents, ignoring the substitution of the name of the new member. The judge thereupon entered the following order: "The judge being

of opinion that the said answer being filed after an appeal and remand comes too late, and therefore refuses to consider the same." He thereupon ordered a peremptory writ of mandamus to issue. The respondents have appealed. Afterwards the district judge allowed the respondents to supersede the order by giving an undertaking in the sum of $200.

Upon the former appeal to this court, it appeared that the trial court had sustained a general demurrer of the respondents to the relator's application for the writ. This court reversed the judgment of the trial court and remanded the cause, "with leave to relator to amend the alternative writ if one has been issued, if deemed necessary, and, in case none has issued, to amend its petition, if so advised."

1. The first contention is that the trial court erred in refusing to consider the answer of the respondents. In *Long v. State,* 17 Neb. 60, Judges REESE and MAXWELL expressed the opinion that, when a demurrer to a writ is overruled, "the defendant still may be permitted by the court to file an answer to the writ." In *State v. Chicago, St. P., M. & O. R. Co.,* 19 Neb. 476, the case of *Long v. State, supra,* is cited as authority for the proposition that a demurrer is the proper pleading to test the sufficiency of a petition for a writ of mandamus, and it is said that the ordinary rule of pleading applies in mandamus cases. This view of the law has been adhered to in subsequent cases. The action of this court upon the former appeal was in effect to overrule the demurrer of the respondents which the trial court had sustained, and when the cause was remanded the respondent under such circumstances should ordinarily be allowed to answer. The fact that the trial court sustained the demurrer indicates, if it does not determine, that the respondents had sufficient reason to file such demurrer in good faith. The decision of this court allowing a relator to amend his proceedings should not be construed as denying the right of the respondents to answer upon the overruling of their de-

murrer. If the relator had amended the substance of its application for the writ, alleging additional grounds therefor, it would follow, as a matter of course, that the respondents were entitled to answer. The reason then given by the trial court, if taken literally, does not justify the ruling.

2. The relator has strangely ignored the regular order of procedure in such cases. When application for the writ is made, and notice of the application is given, the respondent may appear and object to the allowance of any writ. If a demurrer is filed to the application, as was done in this case, and the demurrer is overruled, as was also done by this court, ordinarily the respondents may allege such facts as will show that no writ should issue. The rule as to pleading over and amendments is the same as in other civil cases. If objections to the application for the writ are filed, as was done in this case after the demurrer had been overruled by this court, the trial court should consider whether the objections show that there are substantial issues of fact between the parties, and, if it appears that there are such issues to be tried, the alternative writ should be issued returnable in the county where the action is pending and can be tried. The alternative writ should allege all of the facts that the relator relies upon as entitling him to the relief by mandamus. When the writ is served upon respondents or service waived, the respondents must make a return (answer) to the allegations of the writ. The writ and return form the issues. No other pleadings are required. The allegations of the return are regarded as denied, and must be proved by respondent. If at the hearing upon the application for the writ the objections of respondents to the issuing of the writ are insufficient or frivolous, no alternative writ is necessary. In such case the court should issue a peremptory writ at once, if the application and evidence offered by relator are sufficient to entitle him to that relief. The district judge at chambers has jurisdiction to order a peremptory writ of mandamus,

if no substantial issue of fact is presented by the answer or objections of respondents. *Mayer v. State,* 52 Neb. 764.

The same case holds that, if the respondent by answer or objection to the writ makes it appear that it will be necessary to determine substantial questions of fact in the case, a peremptory writ cannot be issued at chambers; issues must be formed by the alternative writ and return, and such issue must be tried in court.

3. The objection of respondents, then, that the court should have directed the issuance of an alternative writ, and that the court erred in granting the peremptory writ upon the pleadings without evidence, and that the court had no jurisdiction at chambers to grant the peremptory writ, all depend upon the sufficiency of the answer. If the allegations of the answer were sufficient to constitute a defense, these objections are well taken; but, if the allegations of the answer filed furnish no sufficient reason in law to refuse the relief demanded, then the trial court should for that reason have ordered the peremptory writ, and the fact that the language used by the court may be construed to furnish an insufficient reason for the judgment will not require a reversal.

4. It will be seen from the statement of facts in the opinion upon the former appeal that the action was to require the proper authorities of the county to issue a warrant in favor of the city of Crawford for one-half of the road fund that had been collected upon property within the city for certain specified years. The answer begins with a qualified general denial in these words: "Denies each and every allegation therein contained except so far as said allegations are hereinafter admitted or qualified." There is a special denial in the answer "that the said relator is a city of the second class within said state and that it has ever been such city." It is alleged in the petition that the village of Crawford had become a city by increase of population, and "the relator is and has been since May, 1907, a municipal corporation; having a population of more than 1,000, existing under the

laws of Nebraska as a city;" that prior to that time the same territory was incorporated and styled the "Village of Crawford," and that the relator "succeeded to all the rights of said village." This special denial is not a sufficient answer to these allegations. The money in controversy was received by the county during a series of several years, and during that time, according to the allegations of the petition, the village of Crawford, the population having increased to more than a thousand, became, by operation of law, the city of Crawford. If the relator is not a *de facto* city of the second class, facts should be alleged from which that matter can be determined.

5. Another allegation of the answer is that the relator first made the claim against the county of $1,439.54 "for an alleged one-half of road taxes collected within the village of Crawford for previous years," and that the respondents allowed one-half of that amount and issued a warrant which the relator accepted. It was decided in *City of Chadron v. Dawes County*, 82 Neb. 614, that one-half of the road tax collected within the city or village by the county authorities belongs to such city or village, and is not held by the county as owner or debtor, but in trust for the city or village to which it belongs, and this holding is cited with approval in the opinion upon the former appeal in this case. It would not therefore constitute such a claim against the county as the authorities of the city could compromise or cancel in whole or in part. It was the duty of the county treasurer to pay over this money to the city upon demand, unless by some wrongful action of the county authorities he had been prevented from so doing. These allegations of the answer therefore stated no defense.

6. It is further alleged in the answer that the respondents "did in good faith dispute and deny the receipt of said sum of money, and do now deny and dispute the receipt of the same and the liability of said county to said village therefor, and were about to disallow said claim in its entirety." These allegations do not furnish

sufficient ground to authorize a compromise of the claim of the relator. There is attached to the answer, as a part thereof, an exhibit which shows the itemized claim of the relator against the county, amounting to $1,439.64. The allegation that the county denies the receipt of said sum of money is too indefinite to show that there was in fact any controversy in good faith as to the amount of money in the hands of the county belonging to the city. It is not stated what the contention of the county is in that regard. It does not appear what part nor how much of the claim of the city was contested by the county. Construing this allegation most strictly against the county, it does not allege a contest in good faith of a sufficient amount of the claim to furnish a consideration for a compromise, nor does it state any reason for such contest or dispute of the plaintiff's claim or any fact upon which any such dispute could be justified. The allegation of a supposed compromise based upon such a controversy would not constitute any defense to the allowance of the mandāmus.

7. It is further alleged in the answer that after the supposed compromise had been made the respondents allowed one-half of said claim as made, and disallowed the other half, and issued a warrant for the one-half allowed, which was received by the relator as full payment of the claim, and that no appeal was taken by the relator from the action of the county board in disallowing one-half of the claim. In *City of Chadron v. Dawes County*, 82 Neb. 614, it was said: "The fund had been raised in the exercise of a governmental function, for governmental purposes, and, we think, was held in governmental capacity. But whether so or not, it seems clear to us that the county held that portion belonging to the city as a public trust; that it was the continuing duty of the county to faithfully execute the trust by paying over the money." There was nothing for the county board to adjudicate in the matter. The county had in its treasury money that belonged to the city. It was the duty of the county treas-

urer, as before stated, to pay this money over to the city on demand. The county board had transferred it to the general fund of the county. This action was considered an obstruction in the way of the treasurer's performing his duty. It was enough for the city to request the county board to remove this obstruction and permit the county treasurer to perform his duty. The filing of the claim with the county board must be considered as an application on the part of the city for an order to return this money to the proper fund so that the treasurer might comply with the law, and the county board had no jurisdiction to take any other action.

8. These various allegations of the answer amount to an admission that the county had collected from the property of the city for the road fund an amount of money substantially as alleged in the petition, and that one-half of the amount so collected had been paid over to the city and the other half retained by the county. The qualified general denial in the answer is inconsistent with these admissions, and therefore is of no avail as a defense.

9. The allegation "that there is now no cash in the treasury of said county, or any estimate or appropriation to cover said claim, nor any levy against which a warrant therefor could be drawn, nor any adjudication by any court whereby these respondents as a board of county commissioners of said county or by any board of county commissioners of said county under which a warrant therefor can be drawn," and the allegation that one of the original respondents "has gone out of office and has been succeeded by Martin J. Weber, who has not been served," constitute no defense. The respondents cannot defend their action by disposing of the money that was in the treasury at the time the action was begun, as they may have done so far as this allegation goes, nor can they object that the writ runs against one who was not properly served, but has appealed, and is now a proper party. It does not appear from the answer that the respondents

have any substantial defense, and the court therefore did right in disregarding the answer.

The judgment of the district court is

AFFIRMED.